# Stetson v. Sun Company, Appellant.

*Contract—Option—Broker—Ship broker—Statement of claim—Affidavit of defense.*

In an action by a ship broker against a corporation to recover $500 for securing an option on a tug, it appeared that the defendant's president wrote to plaintiff in reference to the tug that he had not obtained sufficient knowledge of the tug to justify the company purchasing her. He continued: "Please ask your principals to make a proposition to us to make two trips towing" a certain schooner named, between points designated. The letter contained terms for the charter party, and concluded as follows: "I would like the refusal of

this tug to stand while she makes these two trips." On the following day the defendant again wrote to plaintiff as follows: "If you can obtain for me an option to buy the tugboat (naming her) at thirty thousand dollars at the end of two trips which she may make, carrying the schooner, I will pay you five hundred dollars for the option; said five hundred dollars to apply on the purchase of the vessel, if I take her; terms of the charter party to be mutually agreed upon." The plaintiff secured the option, and prepared a charter party for the two trips which was satisfactory to the owners of the tug, but which the defendant refused to sign because it contained some matters not satisfactory to it. The defendant filed an affidavit of defense denying liability to the plaintiff in the sum of $500, and setting up certain statements made by plaintiff as to the capacity of the tug, and averring that they were not correct, but not averring that plaintiff knew that they were not correct. *Held*, (1) that the defendant was liable to the plaintiff for $500 for securing the option, inasmuch as the contract did not require the plaintiff to procure from the owners as a condition precedent to his right to demand the promised compensation, a charter party, the terms of which the defendant would assent to, and did in fact assent to; and (2) that the averments as to the misrepresentations were too vague to prevent judgment.

Argued Oct. 23, 1907. Appeal, No. 89, Oct. T., 1907, by defendant, from order of C. P. No. 5, Phila. Co., Sept. T., 1906, No. 2,538, making absolute rule for judgment for want of a sufficient affidavit of defense in case of James N. Stetson, trading as James N. Stetson Son & Company, v. Sun Co. Before RICE, P. J., HENDERSON, MORRISON, ORLADY and BEAVER, JJ. Affirmed.

Assumpsit to recover on a contract to secure an option. The opinion of the Superior Court states the case.

*Error assigned* was order making absolute rule for judgment for want of a sufficient affidavit of defense.

*R. Stuart Smith*, with him *Charles E. Morgan*, for appellant.—Assuming that the plaintiff is entitled to sue upon the contract, the obtaining of an agreement of the North America Wrecking Company to charter the tugboat to the defendant for two trips on terms to be mutually agreed upon, was of the essence of the contract; the plaintiff cannot recover unless he

avers and proves that he submitted to the defendant for execution a charter party embodying such terms; and the affidavit of defense is sufficient in that it sets forth that the charter party submitted to the defendant for execution contained terms not mutually agreed upon and not in accordance with the defendant's letters of July 23 and 24: Wright v. Smyth, 4 W. & S. 527; McCrelish v. Churchman, 4 Rawle, 26; Shaw v. Turnpike Co., 2 P. & W. 454; Martin v. Schoenberger, 8 W. & S. 367; Schilling v. Durst, 42 Pa. 126; Gillespie Tool Co. v. Wilson, 123 Pa. 19; Caughey v. Parker, 26 Pa. Superior Ct. 289; Kelley Brick Co. v. Clay Product Supply Co., 32 Pa. Superior Ct. 408.

The defendant's agreement is to pay $500 to the North America Wrecking Company, the owner, for an option to purchase the vessel; there is no agreement to pay $500 to Stetson, the broker, for obtaining the option.

*Francis S. Laws,* with him *John F. Lewis,* for appellee.— If the broker procures a person with whom a bargain is made upon any terms, he is entitled to his commission, unless there is something special in the contract of employment, or the circumstances of the case, to preclude him: Keys v. Johnson, 68 Pa. 42; Clendenon v. Pancoast, 75 Pa. 213; Reed v. Reed, 82 Pa. 420; Taylor v. Folz, 24 Pa. Superior Ct. 1.

OPINION BY RICE, P. J., July 15, 1908:

The plaintiff was a ship and merchandise broker and part of his business was chartering, buying and selling vessels, and procuring options to buy and sell the same. The defendant was a corporation engaged amongst other enterprises in the business of transporting oil, and as such employed vessels of various kinds in such transportation. In July, 1906, it was desirous of procuring the services of a certain tugboat owned by the North American Wrecking Company for the purpose of having her to tow the schooner "Thomas W. Lawson" upon two trips to Sabine Pass and return. On July 23, 1906, the defendant's president wrote to the plaintiff as follows: "Your favor of July 23d at hand. I find it impracticable to get a

sufficient knowledge of this tug 'North America' to justify our purchasing her. Please ask your principals to make a proposition to us to make two trips towing the 'Thomas W. Lawson' from Newport News to Sabine Pass, returning to Marcus Hook. We to furnish the coal, the tug to furnish its own crew and supplies and all other expenses pertaining to the trip. The Schooner 'Thomas W. Lawson' is required to use her sails to the best advantage in assisting the movement of the vessel. It is estimated that she can make the trip going and coming, each not to exceed ten days. We will guarantee that the entire time of waiting by the schooner for her to load and unload shall not exceed ten days per round trip. These two trips ought to prove whether or not the tug 'North America' is capable of towing the Schooner 'Thomas W. Lawson.' She will go down with only water ballast and return with about 8,000 tons of oil aboard. Her second trip will be from Marcus Hook to Sabine Pass and return. I would like the refusal of this tug to stand while she makes these two trips."

It is to be inferred from the foregoing letter that the defendant's president had received one from the plaintiff on the same date, but as it is not set forth in the plaintiff's statement of claim or in the affidavit of defense we assume that knowledge of its contents is not essential to a determination of the questions arising upon this appeal.

The following day the defendant's president wrote to the plaintiff a second letter which reads: "In addition to the letter sent you on July 23d, if you can obtain for me an option to buy the tugboat 'North America' at $30,000, at the end of two trips which she may make, carrying the 'Lawson' to Sabine Pass and return, I will pay you $500 for the option. Said $500 to apply on the purchase of the vessel if I take her. The charter party to be made as per my letter. The demurrage, in case the ship should be delayed loading or unloading more than ten days, to be paid at the rate of $100 per day. The total charge for the round trip for towing to be $3,000; coal and oil to be furnished by the Sun Company. Terms of the charter party to be mutually agreed upon."

It is averred in the statement and not specifically denied

in the affidavit of defense, that the plaintiff accepted the offer, and on July 30, 1906, obtained for the defendant from the owner of the tug an option to purchase the tug for $30,000, and the owner's agreement to the charter of the tug to the defendant for towage service upon the two trips above referred to. On the same day the plaintiff wrote to the defendant as follows: "Referring to your favor of July 24th will say, we have submitted same to the North America Wrecking Company, and they accepted your terms for charter of tug 'North America' for two trips, with the further provision that you pay $500 option to purchase the tug for $30,000, terms of charter party to be mutually agreed upon. We will prepare charter and submit it to them to-morrow for their approval, and we will send it to you for your signature."

1. One of the questions presented for decision is thus stated by the appellant's counsel: "Does the plaintiff's statement of claim" (in which the above mentioned facts are averred and the letters are set out at length) "disclose any agreement by the defendant to pay $500 to the plaintiff for obtaining from the owner an option to purchase the vessels?" It is an admitted fact that the business of the plaintiff was that of a ship and merchandise broker, and the defendant's letter of July 24 shows that the latter dealt with him as such, and not as the mere representative of the owner of the tug. And, it must be borne in mind, it is not averred in the affidavit of defense that the defendant dealt with the plaintiff in any other capacity, or that the latter was in fact the mere agent of the owner in the transaction. It is true, the defendant's letter of the 23d speaks of a proposal which the defendant desired the plaintiff, to "ask your principals"—inferably meaning the owner of the tug—to make, but that does not take the place of an averment in the affidavit of defense that the plaintiff was the agent of the owner and that the defendant dealt with him as such throughout the whole transaction. Having in the letter of the 23d requested the plaintiff to ask the owner to make a "proposal," the defendant, on the 24th, made to the plaintiff the additional offer, which, for aught that is alleged as to the relation between him and the owner, he had a per-

fect legal and moral right to accept, to pay him a certain sum if he would obtain for the defendant from the owner a certain option. The words of the offer, "if you can obtain for me an option to buy the tugboat 'North America' at $30,000, at the end of the two trips which she may make, carrying the Lawson to Sabine Pass and return, I will pay you $500 for the option," would leave no room for doubt, if they stood alone, that the plaintiff was the person who was to render the service, or that he was the person to whom the compensation therefor was to be paid. Nor do the words of the succeeding sentence, "said $500 to apply on the purchase of the vessel if I take her," so qualify the words of the offer as to convert the explicit and unconditional promise to pay the plaintiff upon performance by him into a conditional promise to pay if the defendant should buy the tug. The more natural and reasonable construction of the words last quoted is to consider them as relating to the proposed contract between the defendant and the owner, rather than as creating a condition upon which the plaintiff's right to compensation should depend, even though he should fully perform his part of the contract. They may be harmonized with the plain words of the offer, as well as with the less plainly worded expressions of the plaintiff's letter, by construing them to mean that the defendant should have the right, under the option which the plaintiff was to procure, to apply the sum paid for procuring it upon the purchase price of $30,000 in the event of the purchase being made. By this construction full effect is given to all the words of the offer and acceptance, whereas, if we adopt the construction contended for by the appellant, we must substitute for the words, "I will pay you $500 for the option," the words, "I will pay the owner $500 for the option." When it is considered that the writer of the offer evidently knew well how to express his meaning, that the offer was made to a broker, whose business was to negotiate between parties regarding such matters for compensation, that he was to "obtain" something for the defendant, and that the only consideration expressed for the rendering of that service was the promise to pay $500, it is reasonably certain that a construction in accordance with the

ordinary meaning of the words will be more likely to carry
out the intention of the parties than the construction con-
tended for by the appellant. In arriving at this conclusion
we have not overlooked any of the extrinsic circumstances to
which our attention has been called in the able brief of appel-
lant's counsel, which ought to be considered in the construc-
tion of the papers. We hold, therefore, that the averments of
the statement of claim show a contract between the plaintiff
and the defendant upon which the plaintiff was entitled to
recover upon proof of performance on his part, and that no
material and relevant facts, which, if proved, would justify
a conclusion that the contract was not between the plaintiff
and the defendant, but between the defendant and the owner,
are averred in the affidavit of defense.

2. Next in logical order is the question of performance. It is
averred by the plaintiff and not denied by the defendant that
a charter party was prepared and submitted to the defendant
for execution; also, that the defendant refused to execute it,
to accept the tug for towage service, to purchase the tug for
$30,000, and to pay the $500 claimed by the plaintiff for pro-
curing the option. One reason assigned in the affidavit of
defense for this refusal is that the charter party contained
terms as to the time the tug was to report at Newport News,
and as to the payment for the services in advance, which, it
is claimed, were not in accordance with the suggestions in the
defendant's letters of July 23d and 24th. But as these terms
were not in conflict with anything specifically mentioned in
those letters or the letter of the plaintiff, and as the letters
of both parties show that all of the terms of the charter party
were not specifically mentioned, and that some of them were
left "to be mutually agreed upon" in the future by the owner
and the charterer, the submission of a charter party for the
defendant's execution which contained terms not mentioned
in the correspondence was not a departure from the contract
created by the plaintiff's acceptance of the defendant's offer.
Did that contract require the plaintiff to procure from the
owner of the tug, as a condition precedent to his right to de-
mand the promised compensation, a charter party to the

terms of which the defendant would assent and did in fact
assent? We are of opinion that it did not. Recurring again
to the words of the accepted offer it is seen that what the plain-
tiff expressly undertook to do was to obtain from the owner
for the defendant "an option to buy the tugboat 'North
America' at $30,000 at the end of two trips which she may
make, carrying the Lawson to Sabine Pass and return." It
may be conceded for present purposes that, impliedly, he also
undertook to obtain the owner's agreement to charter the
vessel to the defendant for the two trips, upon the terms
specifically mentioned in the correspondence and such others
as should "be mutually agreed upon" by the owner and the
defendant. This was all that he was employed to do, or au-
thorized to do. The defendant saw fit to limit his authority
to the extent of leaving open for subsequent negotiation the
full terms of the charter party. The plaintiff having obtained
the option for purchase he undertook to obtain, and having
proceeded as far as he undertook and was authorized to go
in the negotiation for a charter party, the fact that the charter
party subsequently tendered by the owner, pursuant to the
plaintiff's negotiations, contained terms that the defendant
would not agree to, and that in consequence the two trips were
not made and the option was not exercised, neither taken
singly nor together constitute a defense. It may be, if the
plaintiff had been employed to procure a sale of the tug to
the defendant, at the end of the two trips, and a charter party
upon certain specified terms for the service of the tug upon
those trips, that he would not be entitled to the stipulated
compensation, nor any part of it, if he failed in either particu-
lar. Speaking of the proposition that the ordinary commis-
sions of a broker for the sale of real estate are not due until
the sale is effected, unless the sale is prevented by the wrong-
ful refusal of the vendor to convey, the late Judge HARE said:
"There is, however, nothing in this to prevent the employ-
ment of an agent under a special contract and on any terms
that the parties may choose to fix; and if the person so selected
performs the duty for which he was engaged, he will be en-
titled to his wages as in the case of any other service:" Long-

streth v. Long, 6 Phila. 179. This is a clear statement of the principle, which, we think, governs the present case.

3. It was alleged in the affidavit of defense (1) that, before the letters of July 23d and 24th were written, the plaintiff represented to the defendant that the tugboat was of ample capacity, strength and efficiency to tow the schooner "Thomas W. Lawson" on the two trips mentioned in the correspondence in not to exceed ten days from one of the specified points to the other; (2) that the defendant relied upon and was induced by these representations to negotiate for the option and the charter party; (3) that before the charter party was submitted the defendant "ascertained by reports of competent experts who thoroughly examined said tug, that she was too small and wholly unfit and of insufficient power and capacity to tow the said vessel, 'Thomas W. Lawson,' to Sabine Pass in ten days or to return from Sabine Pass to Marcus Hook in ten days;" (4) that the defendant would prove in the trial that these representations "were incorrect and untrue in the particulars above set forth." As there was no representation and no contract as to what the opinions or reports of experts as to the capacity of the vessel would be, it is apparent that the mere fact that experts made reports to the defendant which were in conflict with the plaintiff's representations would not constitute a defense, and unless coupled with facts not now appearing, such reports would not be admissible on the trial. As to the other allegation that the representations were "incorrect and untrue," we remark that the defendant was careful, apparently, not to aver that the plaintiff knew the representations to be incorrect and untrue, or that he ought to have known it, or that there were circumstances, stating them, from which it could be presumed that he knew it, or that the defendant did not have the same knowledge or means of knowledge that the plaintiff had. There is nothing to show with any degree of certainty that the so-called representations were more than the expression of an opinion, honestly entertained by the plaintiff, as to the ability of the tug to tow the schooner on the two trips. That the defendant did not rely upon the representation as the assertion of an actual fact, but rather as

the expression of an opinion, is to some extent evidenced by its letter of July 25, written after the representations are alleged to have been made, in which its president says: "I find it impracticable to get a sufficient knowledge of the tug 'North America' to justify our purchasing her," and again, "These two trips ought to prove whether or not the tug 'North America' is capable of towing the schooner 'Thomas W. Lawson.' " Viewing the averments in connection with the correspondence and with relation to the subject-matter—which after all was a matter of opinion—and considering the significant omissions therefrom to which we have alluded, we conclude that they were insufficient to prevent judgment. We might well have declined to discuss this feature of the affidavit of defense because it is not mentioned in the statement of the questions involved nor in the appellant's brief of argument. Moreover, upon the oral argument counsel, while not abandoning this part of the defense, conceded that the affidavit as to misrepresentation was not strong and that they relied more particularly upon their contention as to the insufficiency of the statement.

The judgment is affirmed.